The questions involved in this appeal have been thoroughly and ably discussed in the learned opinion delivered by Mr. Justice Marcus at Special Term, reported in 72 Misc. Rep. 162, 129 N. Y. Supp. 329. The conclusions which the court has there stated, as will be seen on examination of the opinion, are well sustained both by reason and authority.

The appeal from the order granting the additional allowance was not pressed on the argument. The order was properly granted.

The judgment and order should be affirmed, with costs. All concurred, except McLENNAN, P. J., who dissented in a memorandum.

McLENNAN, P. J. (dissenting). The true interpretation and meaning of the contract in question, as written, was determined by this court, 96 App. Div. 539, 89 N. Y. Supp. 92, opinion by Justice Hiscock, in which all concurred. It was held in that case, which was an action at law, that under the terms of such contract the plaintiff was not' entitled to recover. This action is brought in equity, seeking a reformation of such contract so that its provisions shall inure to the benefit of the Union Iron Works, plaintiff's assignor.

I think there is no evidence which justifies the conclusion that the parties to the agreement did not know and fully understand its provisions; that there is no evidence upon which fraud can be predicated in the negotiation or execution of such contract. Neither is there any evidence from which it can be said that there was mutual mistake in the execution of such contract by the parties. In other words, in my opinion the record is entirely barren of facts which would justify a court of equity in reforming or changing the contract as it was made and executed by the respective parties.

I therefore conclude that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide event.

---

LACKAWANNA STEEL CO. v. PIONEER S. S. CO. et al.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1911.)

1. NEGLIGENCE (§ 80*)—CONTRIBUTORY NEGLIGENCE.

Contributory negligence defeats recovery, though defendant was negligent.

[Ed. Note.—For·other cases, see Negligence, Cent. Dig. § 84; Dec. Dig. § 80.*]

2. ·APPEAL AND ERROR (§ 262*)—EXCEPTIONS BELOW—SUBMISSION OF CAUSE TO JURY—ERRONEOUS THEORY.

While the court on appeal may reverse a judgment for a submission of the case on an erroneous theory, though no exceptions were taken, the power will be exercised only where the erroneous theory clearly appears.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 262.*]

3. WHARVES (§ 22*)—INJURIES TO UNLOADERS—KNOWLEDGE OF DEFECT OR DANGER.

Those in charge of boats using a dock for the unloading of ore might assume that no projections extended beyond the face thereof, and are

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not guilty of negligence in operating their boats without regard to pro-
jections extending from unloading machines on the dock, where they
did not know or were not chargeable with knowledge thereof.

[Ed. Note.—For other cases, see Wharves, Dec. Dig. § 22.*]

4. WHARVES (§ 21*)—NEGLIGENCE—KNOWLEDGE OF DEFECT OR DANGER—EVI-
DENCE.

In an action for injuries to ore unloaders on a dock alleged to have
been caused by the negligent management of boats, evidence *held* to
show that those in charge of the boats did not know, or could not in the
exercise of due care have known, that a girder, which was a part of an
unloader, projected from the face of the dock, and that due care was
taken in the management of the boats after the danger from such girder
became imminent.

[Ed. Note.—For other cases, see Wharves, Dec. Dig. § 21.*]

5. WHARVES (§ 22*)—CONTRIBUTORY NEGLIGENCE.

Evidence, in an action for injuries to ore unloaders on a dock, *held*
to show that the projection of a girder over the dock line was the prox-
imate cause of an injury to such unloaders.

[Ed. Note.—For other cases, see Wharves, Dec. Dig. § 22.*]

Appeal from Trial Term, Erie County.

Action by the Lackawanna Steel Company against the Pioneer
Steamship Company and another. From a judgment of the Supreme
Court (69 Misc. Rep. 104, 124 N. Y. Supp. 833) for defendants, and
an orer denying a motion for a new trial, plaintiff appeals. Affirmed.

See, also, 134 App. Div. 955, 118 N. Y. Supp. 1119.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

Evan Hollister and Rogers, Locke & Babcock, for appellant.

George Clinton and Clinton, Clinton & Striker, for respondent Pio-
neer S. S. Co.

John B. Richards and Brown, Ely & Richards, for respondent Hand
& Johnson Tug Line.

ROBSON, J.    This action was brought to recover damages to
plaintiff's ore unloaders, situate on plaintiff's private ore dock near
Buffalo. This dock forms the easterly side of a canal constructed and
maintained by plaintiff on its own premises, connecting at its north-
erly end with that portion of Lake Erie known as Buffalo Harbor, and
extending thence south some 3,900 feet. The canal is 200 feet wide,
and has been used by many vessels in unloading ore at the dock since
it was opened in about 1904. On this dock unloaders, also known as
hoists, are placed. They are huge structures, equipped with trucks,
which rest on rails on the docks, along which they can be inde-
pendently operated in either direction by their own power. The
manner in which these hoists operate in discharging a cargo is not
important to be now considered. It is sufficient for the present pur-
pose to say that, as built, a large heavy girder at right angles with
the dock was the backbone of the machine. This girder was 72 feet
long, 6 feet in depth, and 12 to 14 inches in width. The top of the
girder was 22 feet above the face of the dock, was longer than the
bottom, and extended westerly beyond the face of the dock 14 inches.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Defendant Pioneer Steamship Company's freight boat, the steamer McGean, had been loaded with ore, consigned to plaintiff, and arrived at this dock in the forenoon of the day of the accident. Its cargo was discharged during the day and evening by the use of three of these unloaders, operated and under the control of plaintiff's servants. These three unloaders are designated, beginning with the northerly one, as Nos. 1, 2, and 3. As they were placed on the dock, their centers were parallel and 48 feet apart. Before the discharge of cargo had been completed the mate of the McGean, as directed by the captain, telephoned to the office of defendant Hand & Johnson Tug Line for a tug to take the McGean out of the canal. The agent declined to undertake the job with one tug, and thereupon by the captain's direction it was agreed that two tugs should be sent. The fact that the tug company declined, as its agent replied when the mate asked for a tug, to take the chances of taking the McGean out of the canal with only one tug, is unimportant, as the chances which the tug line declined to take were not then explained; and the jury may reasonably have concluded that the chances referred to did not relate to the actual movement of the McGean from the dock. Two tugs, the Delta and Hebard, were sent, arriving shortly before the discharge of cargo was finished. The McGean lay with its stern to the north (i. e., towards the mouth of the canal), and its port side, therefore, was next to the face of the dock. The Delta took position at the stern and the Hebard at the bow of the McGean, and each made fast its tow line. The discharge of cargo completed, and the lines by which the McGean was held to the dock cleared, her captain sounded the "O. K." signal, signifying to the tugs that the boat was ready to leave the dock. The stern tug then started across the canal, pulling the stern of the McGean out away from the face of the dock some 15 to 30 feet, then changed its course, heading directly down the canal towards the harbor. The bow tug, lying across the stem of the McGean, did not at this time pull the bow of the McGean away from the dock. Pulling the stern away from the dock without at the same time moving the bow away had a tendency to throw the bow in towards the dock, which was accentuated by a westerly wind, which is described as fresh, and was apparently about 13 to 14 miles an hour. When this movement of the McGean was begun, No. 3 unloader was, of course, the one nearest the bow of the boat, and that was distant about 250 feet from the part of the boat that subsequenly collided with the unloader. This boat is of the ordinary type of lake freighters, and is 452 feet long and 52 feet wide. The deck amidships is known as the "spar deck." Forward its construction is much higher than this deck; the part of the boat, which we may call the bow, rising above the main or spar deck some feet, and the forecastle deck is here located. The shell of the boat forward rises in a curve from the main deck to form the sides of the forecastle; the exposed part forming the forecastle bulwark. The upper part of this bulwark is by some of the witnesses designated the "ogee curve." As the stern tug drew the McGean northerly, the bow of the latter was close to the face of the dock, its rate of progress being about two miles an hour, and some

part of it struck an angle iron, a part of the construction of No. 3 unloader, bending it slightly, but doing no serious damage.    Still moving northerly, the top corner, the ogee curve, of the port side of the bulwarks at the after part of the forecastle deck, caught the projecting girder of No. 2, moved it a short distance along the tracks, and tipped it over against No. 1, wrecking the machines.

The action is the ordinary common-law action for negligence; the negligence of the defendants as charged being negligent and unskillful management of the McGean in taking her from the dock, to which alone it is claimed the collision was due.    Each defendant claims that no negligence on its part was shown, and that in any event it appears that plaintiff's negligent construction and maintenance of the unloaders, with the girder extending 14 inches beyond the face of the dock contributed as a proximate cause to the accident.    The court in an extended charge, to which plaintiff did not except, submitted both questions to the jury; and defendants had the verdict.

[1] Appellant now insists that a finding of the jury that defendants were not negligent is not only against the weight of evidence, but that defendants' negligence was so clearly shown that as matter of law the court should have so held.    Of course, although the defendants' negligence may have been shown, yet if a finding by the jury was warranted that plaintiff was guilty of contributory negligence the verdict would not be disturbed.    But under the charge of the court the question of plaintiff's contributory negligence was made to some extent dependent on a determination of the question whether the construction of the unloader with the extended girder was such that those in charge of the movement of the McGean should in the reasonable exercise of the skill, prudence, and observation of persons engaged in such duty have been discovered by them and avoided.

[2] Appellant now insists that the court submitted the case to the jury on an erroneous theory, and therefore, though no exceptions were taken to the main charge, still a reversal of the judgment should be had in this court on that ground.    That this court has that power is true.    But it should be exercised only in cases where the erroneous theory clearly appears.    The erroneous theory now urged is that the jury were not properly instructed that plaintiff's contributory negligence is no defense to the action, unless that negligence appears to have been a proximate cause of the injury complained of.    Specifically appellant's counsel states his position as follows:    After quoting from the charge of the court, he continues:

"It will be seen from the foregoing charge that the court limited the jury in its determination of the plaintiff's right to recover to a consideration of the sole question as to whether it had placed its unloaders at the edge of the dock in such a position that their overhang was visible to a person exercising reasonable care in observing them as a lake or tug captain was bound to exercise under the circumstances.    The appellant contends that this theory was erroneous, because it excluded from the consideration of the jury the doctrine of proximate cause, which should have controlled in this case.    In other words, the mere fact that the overhang of the unloaders might not have been visible to those in charge of the navigation of the McGean should not in itself, as the jury was instructed it would, defeat the plaintiff's right to recover.    The jury should also have been instructed that

they could return a verdict of no cause of action only in case they found that the invisibility of the overhang of the unloader was the proximate cause of the accident. By omitting any reference to the legal question of proximate cause, the court ignored the following questions of law," etc.

It is true that the court did not use the term "proximate cause," and did charge distinctly 'that if the plaintiff maintained this overhanging girder in such way as not to be observable in the exercise of ordinary care and prudence by those having occasion to use the canal, and defendants did not know, and would not by such exercise of care and prudence have discovered the overhang, then plaintiff was guilty of contributory negligence and could not recover. As the court also charged the jury, and it is therefore the law of the case, and amply supported by authority:

"The Pioneer Steamship Company" (and the same principle was charged as applicable to the other defendant) "in the using of that dock had a right to assume that there would be safety and freedom from danger so long: as it kept its boats in the canal west of the dock line. It had a right to assume that it would be safe and free from danger on its part, if it did not permit its boat to get over to the east of the dock line; in other words the steamboat company had a right to assume that they could occupy all of the space to the west of the dock line from the water's edge to a reasonable height in putting their boats up to the dock and in getting away; but that company, with that assumption and right on its part to assume such safety from danger, could not act upon such an assumption in the face of a known danger."

He then submitted the question of fact to the jury whether the defendants' servants knew, or should have known, of the projecting girder, stating that plaintiff would not be chargeable with contributory negligence, provided it built the unloader in such a way, so fashioned and placed it, that it would be seen by the ordinarily careful and prudent mariner in the exercise of due care for the safety of his vessel.

[**3, 4**] Any one using the dock at plaintiff's invitation would be justi-fied in acting primarily upon the supposition that no projections extended beyond the face of the dock. Whether either of the defendants did know, or should have known, of these projections, was a. fair question of fact for the jury, and defendant has succeeded on that issue. The evidence bears out the finding. The projection was but 14 inches. The very size of the machine of which the girder was a part would tend to induce the belief that no part of such a substantial structure would be permitted to extend beyond the face of the dock as a menace to the safety of any boat when using the canal to the very surface of the dock. The projection was not readily observable, and was apparently not known to plaintiff's employés, who· had been long engaged in operating the machines. There was evidence from which the jury could find that defendant tug line had been assured that no part of the machines extended beyond the dock line. To discover that the girder so extended, it would be necessary· to line up the edge of the dock with the girder. Mere ordinary observation, the jury were well warranted in finding, would not disclose it. The witnesses for defendants charged with the navigation. of the McGean all swore they did not know of it. Their attention had.

not been directly called to it; nor was it necessarily directed to that feature by the use of the machines as they then saw them in operation.

Even conceding that better seamanship would have dictated that the bow of the McGean should not have been permitted by the captain of the bow tug to drag along the side of the dock, the danger from this course was, as the proofs shows, of injury to the boat itself until its high forecastle bulwark came abreast of the projecting girder. If it was negligence of the tug captain, it was up to that point negligence available only to the owner of the McGean, if it was injured thereby, and, as to plaintiff, is negligence only in the abstract, and in no manner concerns its rights. When the captain of the McGean first became aware that there was danger of collision with the unloader, the evidence sustains a finding that he did everything which, under the circumstances, could reasonably be required of him. As to the captain of the bow tug permitting the bow of the McGean to drag along the face of the dock, as the jury may have found, he did not know, and was not chargeable with knowledge, of the danger menacing from the overhanging girder. His position precluded his seeing the unloaders at all; and the evidence warrants the finding that he acted promptly in response to the hail, which first advised him of the actual danger attending the movement of the McGean along the dock. In determining whether defendants were negligent in the management of the McGean, it must always be borne in mind, that, unless they had, or should have had, knowledge of the overhang, they could assume that the canal was free for use to the limit of the dock line. A finding that defendants were not guilty of negligence should not be disturbed.

[5] But, even if both defendants were negligent, plaintiff's contributory negligence still remains as an effectual bar to any recovery. A finding that defendants' employés in charge of the movement of the McGean did not have actual knowledge of the projection of the girder was, as has been said, warranted by the evidence, and that, when danger of collision first became apparent, nothing reasonably within their power to avert it was omitted. But appellant urges that it had a right to build and maintain this structure with its projecting girder on its dock; that it had been so built and maintained for several years; that though its original construction may have been negligent, yet it was a condition which had long existed, and therefore, if there was negligent management of the McGean, and damage resulted, the latter was necessarily the efficient, the proximate, cause to the exclusion of the former. The basis of this claim is that the management of the McGean was such that, as it was moved along the dock with the bow in contact with the dock's outer edge, the bow, owing to its flare outward, would have a tendency to, and might, extend over and beyond the face of the dock. Therefore this was negligent management of the movement. But there seems to be no evidence that the bow did at any time overhang the dock edge. On the contrary, so far as appears, the overhang did not extend quite to the dock line. The part of the girder which the forecastle bulwark engaged was the 14-inch overhang. Even plaintiff does not claim that

any part of the girder showed any mark of contact farther than 13 inches from its extreme end. The principal and only large indentation, showing the actual point where the bulwark efficiently engaged the girder, was but 7 inches from the end, showing clearly that this part of the boat, which upset the unloader, was more than 6 inches outside the face of the dock. Such negligent management, having only "a tendency" to make the bow overhang, is not of itself sufficient to charge defendants with negligence as the sole proximate cause of the accident, unless the bow did in fact overhang the dock. It certainly does not appear that any accident would have occurred, except for plaintiff's negligent construction of the girder with the 14-inch extension. Except for that, at least that part of the boat which struck the girder and caused the damage, would have cleared the unloader entirely. What would have resulted from the further movement of the boat, except for this negligent construction of the unloader, for which plaintiff was solely responsible, is a matter merely of conjecture and speculation.

The judgment and order should be affirmed, with costs. All concur.

